

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

VIKTOR SCHULZ AND IRENE
SCHULZ, husband and wife,

      Plaintiffs,

vs.

CSAA GENERAL INSURANCE
COMPANY, d/b/a AAA INSURANCE
COMPANY, a foreign insurance company;
CSAA INSURANCE EXCHANGE, an
interinsurance exchange; and LEANNA
OSBORN, an Oklahoma Corporation,

      Defendants.

**CJ-2020-01543**

William D. LaFortune

Case No.
Judge

DISTRICT COURT
**F I L E D**

MAY 11 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA, TULSA COUNTY

## PETITION

**COMES NOW**, the Plaintiffs, Viktor Schulz and Irene Schulz ("Plaintiffs"), by and

through their attorneys of record Gibbs Armstrong & Borochoff P.C. and Taylor Foster Mallett

Downs Ramsey & Russell, and for their claim for relief against the above-named Defendants,

allege and states as follows:

### JURISDICTION AND VENUE

1.    Plaintiffs Viktor and Irene Schulz are citizens and residents of Tulsa County State

of Oklahoma. The property owned by Plaintiffs is located in Tulsa County, State of Oklahoma.

2.    Defendant CSAA General Insurance Company, d/b/a as AAA Insurance Company

("AAA") is a foreign insurer licensed to do business in the State of Oklahoma and has one or more

agents located in Tulsa County, State of Oklahoma.

3.    CSAA Insurance Exchange (hereinafter referred to as "CSAA") is an interinsurance

exchange organized under the Insurance Code of California. CSAA is an unincorporated

association made up of its insureds who are also known as subscribers. CSAA subscribers

1

EXHIBIT
2

exchange the insurance contracts with each other. CSAA is not incorporated and has no stock, all operating funds consist of premiums paid by the subscribers of its subsidiaries.

4.       Defendants AAA and CSAA Insurance Exchange are part of reciprocal inter-insurance exchange, in which they pool their business among other insureds and "exchange policies" within the CSAA Insurance Group of companies and share all premiums, expenses and losses. By and through this inter-insurance exchange, Defendant CSAA Insurance Exchange directly or through its subsidiaries, issues policies, collects premiums, pays commissions to agents, and handles every aspect of the AAA bodily injury claims handling. Defendant AAA is a wholly owned subsidiary of CSAA Insurance Exchange. The latest Examination Report on CSAA by the California Department of Insurance explained CSAA's role as the insurer:

> Effective January 1, 2011, the [CSAA] entered into a Reinsurance Pooling Agreement (Agreement) with five of its subsidiaries: CSAA General Insurance Company, CSAA Fire & Casualty Insurance Company, CSAA Affinity Insurance Company, CSAA Mid-Atlantic Insurance Company, and CSAA Mid-Atlantic Insurance Company of New Jersey. *Pursuant to the Agreement , [CSAA] is the lead insurer and each company cedes 100% of it premiums written, unearned premiums, losses, loss reserves and loss adjustment expenses, incurred, policy fees, installment fees, other ancillary income items, and other underwriting expenses incurred to [CSAA].*

*Report of Examination of the CSAA Insurance Exchange as of December 31, 2015, Filed on May 11, 2017.* (emphasis added). According to the Agreement between CSAA and AAA, CSAA is the or one of the insurers.

5.       Defendant CSAA's Rules and Regulations further explain its role as an insurer. The Rules and Regulations of CSAA Insurance Exchange, as amended January 1, 2018, state:

> [CSAA] shall have powers equivalent to those of a corporation engaged in the business of insurance to the fullest extent permitted by applicable law. Without limitation, [CSAA] may engage employees, including officers, enter into any lawful contract, maintain bank accounts,

hold and invest assets in accordance with applicable law, establish reserves, maintain books and records, own real and personal property, organize or acquire and own, subsidiary entities and undertake the specific activities enumerated elsewhere herein.

*Rules and Regulations of CSAA Insurance Exchange, as amended January 1, 2018.*

6.      Oklahoma's Insurance Code Okla. Stat. tit. 36 § 3615, incorporates the constituent documents, like the Rules and Regulations of CSAA, of a reciprocal insurer into the policy of insurance.

7.      CSAA is organized under the State law of California.   California law deems the insurance exchange as one of the insurers of an insured's policy:

> The organization under which such subscribers so exchange contracts is termed a reciprocal or interinsurance exchange and shall be deemed the insurer while each subscriber shall be deemed an insured.

*Ca. Ins. Code,* Art. 2 § 1303.

8.      Upon information and belief, CSAA is directly involved in adjusting claims because CSAA employees hold primary responsibility for handling claims by insureds.

9.      CSAA Insurance Exchange is deemed a citizen of all states where its subscribers reside. Since CSAA subscribers live in Oklahoma, CSAA is a citizen of Oklahoma.

10.     Defendant Leanna Osborn is a resident and citizen of Tulsa County, State of Oklahoma. Plaintiffs purchased their homeowners' replacement cost policy of insurance through the offices of Leanna Osborn.

11.     Jurisdiction is afforded to this Court pursuant to Okla. Stat. tit. 12 § 2004(F) and Okla. Const. Art. VII, §7.

12.     Venue is proper in Tulsa County pursuant to Okla. Stat. tit. 12 §§ 137, 141.

## FACTUAL BACKGROUND

13.     Plaintiffs built their home in 2005.

3

14.     In 2008 or 2009, Plaintiff's roof was damaged by a windstorm. Plaintiff made a claim for roof damage. That claim was paid, and Plaintiffs hired a roofer who replaced approximately 2/3 of their roof. Plaintiffs had no further problems with their roof until August 16,2018.

15.     In 2014, Plaintiffs contacted Leanna Osborn's office to purchase insurance coverage for their home.

16.     Leanna Osborn, AAA's insurance agent, took their information and performed an exterior inspection of Plaintiff's roof and home.

17.     After Ms. Osborn's inspection, she advised AAA, and the Plaintiffs, that the home met all underwriting requirements. Thereafter, AAA sold Plaintiffs a homeowners' replacement cost policy (standard policy with AAA) through AAA for the period of one year.

18.     Since that time, the Plaintiffs have renewed their homeowners' policy with AAA each year. Throughout the life of the policy and each renewal, the Plaintiffs have faithfully paid their insurance premiums.

19.     On or about August 16, 2018, the Plaintiffs' home was damaged by wind and hail.

20.     On or about April of 2019, Plaintiffs notified AAA Insurance that their roof was damaged as a result of the storms on August 16, 2018. Initially, Leanna Osborn and the adjustor, told Plaintiffs that there was no problem and the damage would be covered.

## COUNT I
### BREACH OF CONTRACT

21.     Plaintiffs fully incorporate into this paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendants Leanna Osborn, AAA, and CSAA hereby allege as follows:

22.     Plaintiffs entered into a contract of insurance with AAA and CSAA to provide homeowners' insurance for their dwelling. Plaintiffs' homeowners' policy was in full force and effect at all material times hereto.

23.     Plaintiffs provided proper and timely notice to AAA, CSAA, and Ms. Osborn of their claim arising from wind and hail which occurred to their home following the storm in August of 2018.

24.     Plaintiffs have in all material ways complied with the terms and conditions of the policy.

25.     AAA and CSAA breached their contractual obligations under the terms and conditions of the insurance contract with Plaintiffs by failing to provide coverage to pay Plaintiffs all benefits to which they are entitled under the terms and conditions of the policy.

26.     As a result of AAA and CSAA's breach of contract and other wrongful conduct, Plaintiffs' have sustained financial losses, mental and emotional distress, and have been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of attorneys' fees, costs and interests.

## COUNT II

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

27.     Plaintiffs fully incorporate into this paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendants AAA, CSAA, and Leanna Osborn hereby allege as follows:

28.     AAA and CSAA have breached their duty to deal fairly and in good faith by engaging in the following acts and omissions:

    a.     Failing to perform a proper investigation in regarding to Plaintiffs' claims made under their homeowners' policy.

    b.     Failing to pay the full and fair amount for property damage sustained by Plaintiffs in accordance with the terms and conditions of their insurance policy;

    c.     Refusing, without proper cause, to pay Plaintiffs all benefits they are owed under the insurance contract and pursuant to Oklahoma law.

    d.     Purposefully, wrongfully and repeatedly withholding pertinent benefits, coverage and other provisions due to Plaintiffs under the terms and conditions of their insurance policy in violation of the Unfair Claims Settlement Practices Act, 36 O.S. §§ 1250.1-1250.16.

    e.     Purposefully, wrongfully and repeatedly failing to communicate all coverages and benefits applicable to the Plaintiffs' claim.

    f.     Forcing Plaintiffs to retain counsel to recover insurance benefits to which they were entitled under the terms and conditions of the insurance contract.

    g.     Failing to perform a fair and objective investigation of Plaintiffs' damages.

6

    h.    Knowingly and intentionally failing to engage in proper claims handling practices and failed to compensate its insured for losses under its homeowners' policy.

    i.    Engaging in outcome-oriented investigation and claim handling practices.

    j.    Engaging in these improper claims' practices knowing that its insureds would suffer financial harm.

    k.    Putting its interest in maximizing financial gains and limiting disbursements above the interests of the Plaintiffs.

29.    The conduct of AAA and CSAA, as described above, constitutes bad faith and is a material breach of the terms and conditions of the insurance contact between the parties. AAA and CSAA have no reasonable basis in its refusal to recognize and pay Plaintiffs their benefits under the policy for damages caused by the windstorm to their roof.

30.    The conduct of AAA and CSAA, as described above, constitutes bad faith and is a material breach of the terms and conditions of the insurance contract between the parties. AAA and CSAA have no reasonable basis in its refusal to recognize and pay Plaintiffs the cost of replacement of the roof as per the policy for damages caused by the windstorm and hail to their home.

31.    As a consequence of AAA and CSAA's breach of the duty of good faith and fair dealing, Plaintiffs has sustained damages, including deprivation of monies rightfully belonging to them, anger, stress, worry, physical and emotional suffering, attorney's fees, litigation costs, and loss of income.

7

32.    The conduct of AAA and CSAA was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

33.    The actions of AAA and CSAA during the handling of Plaintiffs' claim demonstrate it acted intentionally, and with malice and, breached its duty to deal fairly and in good faith. The actions of AAA and CSAA were intentional, malicious, and consistent with an overall collective corporate goal of increasing profits through the systematic underpayment of claims. Plaintiffs therefore seeks punitive damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT III
## NEGLIGENT PROCUREMENT OF INSURANCE

34.    Plaintiffs fully incorporates into this paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for his additional claims against Defendants Leanna Osborn, AAA, and CSAA hereby allege as follows:

35.    Plaintiffs hired Ms. Osborn as their primary insurance agent for their homeowner's insurance needs. At all times relevant hereto, Ms. Osborn was an agent and/or ostensible agent of AAA and CSAA.

36.    Ms. Osborn owed Plaintiffs a duty to act in good faith and to exercise reasonable care, skill and diligence in the procurement of insurance for Plaintiffs.

37.    Ms. Osborn had a duty to accurately inform Plaintiffs of all coverages, benefits, limitations, and exclusions in the coverage procured.

38.    Ms. Osborn had a duty to procure the coverage that was actually requested by Plaintiffs, which included the replacement cost coverage subject to no exclusions.

8

39.   Ms. Osborn was the first line of underwriting for AAA, and CSAA and was required to conduct an inspection of the property. Among other things, she had a duty to independently verify the condition of the property, accurately take measurements of the dwelling and obtain information pertaining the amenities and construction quality of the dwelling. In so doing, she represented there were no preexisting issues with the property that would limit or restrict coverage in the event of either partial or total loss, the policy she procured and renewed for Plaintiffs was for full replacement, that in the event of damage or loss, said damages and losses would be fully paid, and the property would be restored back to its pre-loss condition in the event of a loss.

40.   In the event there was evidence of wear/tear, defects or inadequate workmanship at the time of Ms. Osborn's inspection, she had a duty to report the same to Plaintiffs and AAA and CSAA. However, at no relevant time did she, AAA, or CSAA ever advise Plaintiffs that their home had any wear/tear defects or inadequate workmanship, any pre-existing damage or that their home did not meet any of the underwriting guidelines of AAA and CSAA.

41.   Ms. Osborn independently established, calculated and set the replacement cost policy limits, in the insurance contract. She recommended and represented to Plaintiffs that they should insure their home to one hundred percent (100%) of its replacement cost value, as determined by her, utilizing AAA and CSAA's valuation software.

42.   Ms. Osborn asked general questions about the dwelling, and aside from answering these questions Plaintiffs had no input into the amount of coverage independently selected and calculated by Ms. Osborn.

43.     Ms. Osborn had a duty to procure the coverage that she promised to Plaintiffs, which included replacement cost coverage and subject to no exclusions.

44.     Ms. Osborn breached her duty owed to Plaintiffs and is liable to Plaintiffs because through the fault of Ms. Osborn, the insurance requested by Plaintiffs was not procured as promised and Plaintiffs have suffered a significant loss.

45.     Ms. Osborn is the agent and/or ostensible agent of AAA and CSAA. AAA and CSAA are vicariously liable for the conduct of Ms. Osborn.

46.     As a result of Ms. Osborn's conduct, Plaintiffs have sustained financial losses, mental and emotional distress, loss of income, and have been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of attorney's fees, costs, and interest.

47.     The conduct of Defendants was intentional, willful, malicious, and in reckless disregard for the rights of the Plaintiffs and is sufficiently egregious in nature as to warrant the imposition of punitive damages.

## COUNT IV
## CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION

48.     Plaintiffs fully incorporates into this paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for his additional claims against Defendants Leanna Osborn, AAA, and CSAA hereby allege as follows:

49.     Leanna Osborn had a duty to exercise reasonable diligence and skill in obtaining and notifying Plaintiffs of the nature and character of the insurance procured.

50.     Ms. Osborn represented to Plaintiffs that they had the best policy AAA and CSAA wrote.

10

51.     Leanna Osborn represented to Plaintiffs that the policy they purchased was not subject to any exclusions. She represented there were no preexisting issues with the property that would limit or restrict coverage in the event of either a partial or total loss and that the dwelling met all of AAA's and CSAA's underwriting requirements.

52.     Ms. Osborn represented to Plaintiffs that in the event they sustained a loss from a covered event, their dwelling would be covered under the policy.

53.     Plaintiffs relied on the above-referenced representations of Ms. Osborn in purchasing and renewing their policy of insurance with AAA and CSAA.

54.     Defendant Leanna Osborn breached this duty by misrepresenting to Plaintiffs as follows:

        a.      Misrepresenting that the insurance coverage procured was truly one of "replacement," or Extended Coverage Endorsement, based upon Ms. Osborn's calculations of its replacement cost value using AAA and CSAA's valuation tool.

        b.      Misrepresenting that all of AAA and CSAA's underwriting policies/guidelines were followed and met and that all necessary inspections of the dwelling occurred and were properly conducted; and

        c.      That the dwelling was in good condition, the policy purchased and renewed by Plaintiffs was not subject to any exclusions, and there were no preexisting issues with the dwelling that would limit or restrict coverage in the event of either a partial or total loss.

55.     Plaintiffs relied on the above-referenced representations of Ms. Osborn in purchasing their policy of insurance with AAA and CSAA.

11

56.     As a result of Leanna Osborn's breach of duty, she gained an advantage for herself by misleading Plaintiffs, to Plaintiffs' prejudice. Ms. Osborn's misrepresentations constitute constructive fraud.

57.     Plaintiffs were induced to accept and purchase the AAA and CSAA Homeowner's Insurance Policy by Leanna Osborn's misrepresentations and constructive fraud.

58.     Plaintiffs were misled by Leanna Osborn's misrepresentations and constructive fraud. Plaintiffs relied on Ms. Osborn's misrepresentations to their detriment.

59.     Leanna Osborn is the agent and/or ostensible agent of AAA and CSAA. AAA and CSAA are vicariously liable for the conduct of Ms. Osborn.

60.     As a result of Leanna Osborn's conduct, Plaintiffs have sustained financial losses, mental and emotional distress, and have been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of attorney's fees, costs, and interest.

61.     The conduct of Leanna Osborn, AAA, and CSAA was intentional, willful, malicious and in disregard of the rights of Plaintiffs, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants Leanna Osborn, AAA, and CSAA for breach of contract damages, tort damages, and punitive damages in excess of seventy-five thousand dollars ($75,000.00) together with costs, interest, reasonable attorneys' fees, and other relief that this Court deems just and equitable.

Respectfully submitted,

GIBBS ARMSTRONG BOROCHOFF, P.C.

George Gibbs, OBA #11843
601 South Boulder Avenue, Suite 500
Tulsa, Oklahoma 74119
918-587-3939  Telephone
918-582-5504  Facsimile
ggibbs@gablawyers.com

And

Darrell W. Downs
Jacob R. Daniel
**Taylor Foster Mallett Downs Ramsey & Russell**
400 West 4th Street
Claremore, OK 74107
ddowns@soonerlaw.com
jdaniel@soonerlaw.com
**ATTORNEYS FOR PLAINTIFFS**


**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**